**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                        Plaintiff,                    1:23-cv-1098 (BKS/ML)

v.

$603,650.28 SEIZED FROM BANK OF AMERICA
ACCOUNT ENDING IN 7090 HELD IN THE NAME OF
ZHAOHUI CHEN,

                                        Defendant.

**Appearances:**

*For Plaintiff United States of America*:
Carla B. Freedman
United States Attorney
Elizabeth A. Conger
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

*For Claimant Zhaohui Chen*:
Julie A. Nociolo
E. Stewart Jones Hacker Murphy LLP
28 Second Street
Troy, New York 12180

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff the United States of America commenced this civil forfeiture action via verified

complaint for forfeiture in rem of $603,650.28 seized from Bank of America account ending in

7090 held in the name of Zhaohui Chen ("Defendant-Funds"), pursuant to 18 U.S.C.

§ 981(a)(1)(A) and § 981(a)(1)(C) as the proceeds of, and property involved in, violations of 18

U.S.C. § 1956(a), § 1956(h), § 1957(a), § 2314, and § 2315, and pursuant to Rule G of the

Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions

("Supplemental Rule G"). (Dkt. No. 1.) Presently before the Court are the Government's motion

for default judgment and for entry of a final order of forfeiture under Rule 55(b)(2) of the

Federal Rules of Civil Procedure and General Order #15 of the United States District Court for

the Northern District of New York, (Dkt. No. 11-1), and Claimant Zhaohui Chen's motion to set

aside the entry of default under Rule 55(c) of the Federal Rules of Civil Procedure and for leave

to file a claim and an answer to the complaint, (Dkt. No. 17). Claimant opposed the

Government's motion, (Dkt. No. 17-1, at 4 n.1), and the Government filed a combined response

to Claimant's motion and reply in support of its motion, (Dkt. No. 18). For the reasons that

follow, Claimant's motion to set aside the entry of default and for leave to file a claim and an

answer to the complaint is granted and the Government's motion for default judgment is denied.

## II.      BACKGROUND

### A.      The Complaint for Forfeiture

The Government alleges that an investigation involving Homeland Security

Investigations identified Wufeng Zhang and Claimant "as individuals involved in the theft and

interstate transportation of goods stolen from home improvement retail stores[] and the

laundering of the proceeds from these offenses" as part of an "organized retail crime ring." (Dkt.

No. 1, ¶¶ 11, 13.) Specifically, the Government alleges that "[o]n multiple occasions between

June 2022[] and January 2023, Zhang and [Claimant] were observed transporting stolen goods

from the victim companies . . . located in New York, Pennsylvania, South Carolina, North

Carolina, Georgia, and Florida, and unloading the stolen merchandise at Zhang and [Claimant]'s

residence located at 3 Thelma Avenue, Colonie, New York" ("Thelma Avenue Property"). (*Id.*

¶ 12.) The Government details how two schemes allegedly operated: One involved Zhang approaching a cash register with merchandise arranged in the cart so that smaller but more valuable items were concealed by larger and less expensive items; Zheng would then only scan and pay for the visible larger and less expensive items with a credit card and would leave without having paid for the more expensive hidden items. (*Id.* ¶¶ 15–19.) The other scheme "involved the payment of cash kickbacks to . . . employees who allowed Zhang to leave the store after scanning only some of the items in Zhang's cart." (*Id.* ¶¶ 20–29.)

"Zh[a]ng was observed using two vehicles, a 2020 Mercedes Benz Sprinter Van . . . and a 2018 Mercedes Benz Sport Utility Vehicle, along with two trailers," all of which were registered to Claimant, "to transport the stolen merchandise." (*Id.* ¶ 14.) Investigators affiliated with one of the victim companies "observed Zhang and [Claimant] bringing copper wire," which "corresponded with merchandise taken from [the victim company's] stores located in South Carolina, North Carolina, and Pennsylvania between August 16, 2022[, and] August 18, 2022," "into a large garage-type structure or outbuilding located at the Thelma Avenue Property." (*Id.* ¶¶ 30–31.) The Government also alleges that on January 3, 2023, Claimant "loaded [two stolen water hears] into the Sprinter Van" and "Zhang drove the vehicle to the front of the store," where Claimant "exited the Sprinter Van, entered the store, and approached the cash register in the returns department where she obtained a refund for one of the stolen water heaters as a prior 'pick up later' purchase." (*Id.* ¶¶ 42–43.) "Approximately two hours later, Zhang and [Claimant] committed the same type of theft at a . . . store located in Catskill, New York." (*Id.* ¶¶ 44–45.)

The Government alleges that "[o]ne financial record found in the [2020 Mercedes Benz] Sprinter Van was a statement for [Bank of America] Account 7090—the account from which the Defendant Funds were seized." (*Id.* ¶ 38.) Records from Bank of America show that Account

7090 was opened in 2018 by Claimant and listed the Thelma Avenue Property as the mailing address on each bank statement. (*Id.* ¶ 46.) "In the paperwork for the opening of Account 7090, [Claimant] lists her occupation as 'Mechanic,'" but "[n]one of [Claimant]'s employment records indicate that she was employed as a mechanic, she was never seen working as a mechanic while under surveillance, and she did not indicate that she was a mechanic during her interview with law enforcement." (*Id.* ¶ 47.)

The Government further alleges that since "at least June 2022, [Claimant] has received a significant number of large checks from Zhang for deposit into Account 7090," including four checks, each for an amount between $5,000 and $30,000 deposited between June 2022 and September 2022. (*Id.* ¶ 48.) "Zhang was also found in possession of a bank card for Account 7090." (*Id.* ¶ 40.) Additionally, records from Bank of America "show that a credit card account ending 0407 in the name of Wei Feng Packaging Inc. . . . was opened in 2015 by [Claimant] and Zhang," and the account "lists the Thelma Avenue Property as the address of record on each bank statement." (*Id.* ¶ 49.) "Since at least March 2021, records for Account 0407 show a significant number of charges and return debits at various . . . retail locations, including those locations identified in the investigation located in New York, Pennsylvania, North Carolina, and other states." (*Id.* ¶ 50.) Claimant "is listed on the signature card associated with Account 0407 as Wei Feng Packaging Inc.'s treasurer, and Zhang is listed as the President." (*Id.* ¶ 50.)

The Government alleges that on January 11, 2023, "law enforcement executed a search warrant at the Thelma Avenue Property" and "found stolen merchandise from [the victim companies], including hot water heaters and tanks, roofing products, compressors, a lawnmower, a snow thrower, a refrigerator, trim and molding, flooring and building materials, painting supplies, screws and fasteners, steel beams and PVC piping, plumbing items, ceiling tiles, and

4

assorted other appliances and products including power tools, sanders, and accessories." (Dkt. No. 1, ¶ 55) In total, law enforcement recovered property stolen from victim companies valued at $100,106.42 during the search of the Thelma Avenue Property. (Dkt. No. 1, ¶ 56.).

B.    **Procedural Background**[1]

On January 11, 2023, Zhang was arrested by Homeland Security for interstate transportation of stolen goods, and law enforcement seized the Defendant-Funds. (Dkt. No. 18-1, ¶¶ 3–4.)[2] On February 16, 2023, the United States Customs and Border Protection's Fines, Penalties, and Forfeitures Office ("FP&F") sent notice regarding the seizure of the Defendant-Funds to Claimant, Zhang, and Bank of America. (Dkt. No. 18-1, ¶ 5.) On March 10, 2023, FP&F received a letter from Attorney Stephen R. Coffey of O'Connell & Aronowitz requesting additional time to respond to the notice of the seizure of Defendant-Funds. (*Id.* ¶ 6; Dkt. No. 18-2.)[3] The same day, FP&F responded via email, advising Coffey that "there is no need for the FP&F office to arrange for additional time for Ms. Chen to respond regarding the forfeiture of property" because "the USAO, NDNY has requested that this matter be referred directly to that office for judicial forfeiture proceedings at this time," and "[t]he USAO will be in contact, and . . . Ms. Chen may respond directly to that office to address the property." (Dkt. No. 18-1, ¶ 7; Dkt. No. 18-3, at 2.)

---

[1] These facts are drawn from the declarations and affidavits, as well exhibits attached thereto, submitted in support of the parties' motions, (Dkt. Nos. 11, 17, 18).

[2] Zhang pleaded guilty on August 17, 2023, to one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314, (Text Minute Entry dated Aug. 17, 2023, *United States v. Wu Feng Zhang*, No. 23-cr-270 (N.D.N.Y.)), and was sentenced to twenty-five months in prison and three years of supervised release, (Dkt. No. 43, *Wu Feng Zhang*, No. 23-cr-270 (N.D.N.Y.)).

[3] The Government states that in the letter, Coffey "advis[ed] that he represented [Claimant] Chen," (Dkt. No. 18-1, ¶ 6), but the letter indicates that Coffey's firm "has been retained to represented Anna Zhang," (Dkt. No. 18-2, at 2). In any event, neither Claimant nor Coffey dispute that Coffey represented Claimant during these prior proceedings. (Dkt. No. 17-2, ¶¶ 2–3; Dkt. No. 17-3, ¶ 9.)

On August 29, 2023, the Government filed its verified complaint for forfeiture in rem. (Dkt. No. 1.) On August 30, 2023, the Clerk of Court issued a warrant for arrest of articles in rem for Defendant-Funds. (Dkt. No. 2.) The warrant was executed on August 31, 2023. (Dkt. No. 5, at 4.)

The same day, the Government served notice of this action, including a copy of the verified complaint, the warrant for arrest of articles in rem, and a "Notice to Potential Claimant," on Coffey at the office of O'Connell & Aronowitz at 54 State Street, Albany, New York, 12207, and on Zhang at Albany County Correction Facility. (Dkt. No. 3.)[4] Claimant concedes that she was previously represented in this matter by Coffey. (Dkt. No. 17-3, ¶ 9.) Coffey attests to the same. (Dkt. No. 17-2, ¶¶ 2–3.) The certified return-receipt card as to Coffey was signed on September 5, 2023. (Dkt. No. 8-1, ¶ 3(a).) The Notice to Potential Claimant indicated, pursuant to Supplemental Rule G, that any claimant had thirty-five days from the mailing of the notice to file a claim. (Dkt. No. 18-4, at 2.)[5]

On November 7, 2023, the Government requested an entry of default and submitted a supporting affidavit. (Dkt. Nos. 8, 8-1.) The same day, the Clerk entered the default of Defendant-Funds. (Dkt. No. 9.) The Government filed its motion for default judgment on November 13, 2023, and served its motion papers and the briefing schedule on Coffey as the attorney for Zhang, Claimant, and Anna Zhang. (Dkt. Nos, 11–12.) Coffey concedes that "notice of the . . . action was served . . . to [him]" and indicates that he "intended to oppose the entry of default and in fact had prepared extensive papers on [Claimant's] behalf," but the matter was

---

[4] The Government also served notice of this action on Anna Zhang at an address in North Carolina on September 27, 2023. (Dkt. No. 6.) Notice of this action was posted on an official government website, www.forfeiture.gov, for thirty consecutive days beginning on September 1, 2023. (Dkt. No. 7.)

[5] According to the Government, the deadline by which Claimant was required to file a claim was therefore October 4, 2023. (Dkt. No. 18-1, ¶ 14.)

misplaced "in [O'Connell and Aronowitz's] document handling system" and "[a]s a result, due to an unintentional law office failure, a claim was not timely filed on [Claimant]'s behalf." (Dkt. No. 17-2, ¶¶ 3–5.)[6] On November 28, 2023, Assistant United States Attorney Elizabeth Conger received a voicemail from Coffey, and Conger and Coffey spoke later that day. (Dkt. No. 18-1, ¶¶ 16–17.) Conger informed Coffey that the deadline to file a claim had passed. (*Id.* ¶ 17.)

No verified claim or answer has been filed in this action. On December 8, 2023, Claimant, represented by new counsel, filed a motion to set aside the entry of default. (Dkt. No. 17).

### C.      Claimant's Declaration

In her declaration in support of her motion, Claimant states that she was married to Zhang but that they have been divorced since October 21, 2022. (Dkt. No. 17-3, ¶¶ 3–4.) Claimant states she has never been charged with a crime, that Account 7090 is her bank account, which has been active since around 2013 and of which she is the sole owner, and that none of the funds held in Account 7090 are the proceeds of a federal crime. (*Id.* ¶¶ 8, 12–14, 25.) Claimant alleges that "[s]ubstantial amounts of the funds in [Account 7090] came from various legal sales by [Claimant] of real estate.), a large insurance payment to [Claimant] for a property loss, and rental income payments to [Claimant] for property [Claimant] owned and leased." (*Id.* ¶¶ 16–22, 26.) Claimant submitted documentary evidence which she alleges supports her allegations. (Dkt. Nos. 17-5 to 17-12.)[7] Claimant also alleges that "[o]n numerous occasions, [she] advanced . . . Zhang funds for use in his construction business" and that Zhang "would often repay [Claimant] by

---

[6] The Government's proofs of service indicate service on Coffey via mail, (Dkt. Nos. 3, 12), but Coffey states that he was served via email, (Dkt. No. 17-2, ¶ 3).

[7] Claimant states that she requested complete bank records from Bank of America but received only records dating to 2017. (*Id.* ¶ 14.)

check, which were deposited in [Account] 7090." (*Id.* ¶ 23.) Claimant alleges that "[a]t the time

the criminal activity of . . . Zhang is alleged to have commenced, the account balance was at least

$534,369.05." (*Id.* ¶ 24; Dkt. No. 17-6, at 123).

## III.   CLAIMANT'S MOTION

### A.   Standard of Review

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set

aside an entry of default for good cause, and it may set aside a final default judgment under Rule

60(b)." Here, there has been an entry of default, but default judgment has not been rendered.

Therefore, the "good cause" standard of Rule 55(c), rather than the "excusable neglect" standard

of Rule 60(b), *see State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 456 (2d Cir.

2011) (summary order), applies.

"Because Rule 55(c) does not define the term 'good cause,'" the Second Circuit has

"established three criteria that must be assessed in order to decide whether to relieve a party from

default." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are

"(1) whether the default was willful; (2) whether setting aside the default would prejudice the

adversary; and (3) whether a meritorious defense is presented." *Id.*[8] "Other relevant equitable

factors may also be considered," such as "whether the failure to follow a rule of procedure was a

mistake made in good faith and whether the entry of default would bring about a harsh or unfair

result." *Id.*

---

[8] These factors are the same as those considered in determining whether to set aside a final default judgment under
Rule 60(b), though "courts apply the factors more rigorously in the case of a default judgment." *See id.* (citing *Meehan
v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). But because the standards are sufficiently similar, cases involving Rule
60(b) are instructive in deciding motions under Rule 55(c) and vice versa. *See Bricklayers & Allied Craftworkers Loc.
2, Albany, N.Y. Pension Fund* v. *Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 n.1 (2d Cir. 2015); *see also
Gov't Emps. Ins. Co. v. Anikeyev*, No. 14-cv-3775, 2016 WL 1275042, at *2 n.1. 2016 U.S. Dist. LEXIS 45691, at *7
n.1 (E.D.N.Y. Mar. 31, 2016) (collecting cases).

The burden of showing good cause is shouldered by the party moving to set aside the default. *See Sony Corp. v. Elm State Elec., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). But the Second Circuit expresses a strong "preference for resolving disputes on the merits," *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995), and "[d]efault judgments 'are generally disfavored and are reserved for rare occasions,'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp.*, 10 F.3d at 96). Accordingly, "good cause" under Rule 55(c) "should be construed generously." *Enron Oil Corp.*, 10 F.3d at 96. "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* Ultimately, "dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Id.* at 95.

### B.     Discussion

The Government concedes that it would not be prejudiced if the Court granted Claimant's motion. (Dkt. No. 18, at 6.) Therefore, the Court discusses only the two remaining criteria for analyzing good cause: the willfulness of the default and whether Claimant presents a meritorious defense.

### 1.     Willfulness

Claimant argues that her default was not willful because she has not acted in bad faith or attempted to tactically violate orders of the Court. (Dkt. No. 17-1, at 7–8.) The Government argues that Claimant's prior counsel's "inexplicable failure to file a claim and unaccountable delay in reaching out to the government constitute willfulness." (Dkt. No. 18, at 8.)

Willfulness in the context of a default is "'conduct that is more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers & Allied Craftworkers*, 779 F.3d at 186 (alteration in original) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). "'[A] finding of bad faith is [not] a necessary predicate to concluding that a [defaulting party] acted 'willfully,'"; rather, "'it is sufficient' to conclude 'that the [defaulting party] defaulted deliberately." *Id.* (quoting *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998)). "[T]he good cause standard attaches consequences only to bad faith or tactical violations of court orders." *United States v. Starling*, 76 F.4th 92, 102 (2d Cir. 2023).

Here, there is no support in the record demonstrating that Claimant was willful or otherwise deliberate in her default. While it is not disputed that Claimant's prior attorney received service[9] and failed to timely respond, (Dkt. No. 17-2, ¶¶ 3–4), Claimant's prior attorney stated that this failure was "misplaced in [his law firm's] internal document handling system," and "due to [this] unintentional law office failure, a claim was not timely filed on [Claimant]'s behalf." (*Id.*) This conduct was not willful, deliberate, or egregious; nor does the record demonstrate that Claimant's prior attorney engaged in bad-faith or tactical violations of court orders—indeed, Claimant's prior attorney states that he "had intended to oppose the entry of default and in fact had prepared extensive papers on [Claimant's] behalf, firmly believing that she has a legitimate claim to some or all of the funds in the subject account." (*Id.* ¶ 5.) Thus, construing the good cause standard generously and resolving doubt in favor of Claimant, Claimant's prior attorney's conduct, while perhaps negligent, was not willful. *See Car-Freshner Co. v. Air Freshners, Inc.*, No. 10-cv-1491, 2012 WL 3294948, at *4, 2012 U.S. Dist. LEXIS

---

[9] Claimant herself states that she "was not notified of the status of this proceeding by my prior attorney, Steve Coffey, Esq., until the entry of default"; she has "never heard of the website www.forfeiture.gov"; she does not speak, write or read fluent English, has "never accessed th[at] website"; and she "never saw a public notice of this action on www.forfeiture.gov." (Dkt. No. 17-3, ¶¶ 4, 9–11.)

112826, at *11 (N.D.N.Y. Aug. 10, 2012) ("[W]illfulness within this Circuit does not include careless or negligent errors even when the negligence is gross." (citing *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996))). Moreover, the relatively short period in which Claimant was in default counsels in favor of Claimant: Claimant, represented by new counsel, moved to set aside the entry of default approximately one month after the Clerk's entry of default and less than four weeks after the Government moved for default judgment. (Dkt. Nos. 9, 11, 17); *see New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-449, 2020 WL 2770922, at *4, 2020 U.S. Dist. LEXIS 83499, at *12–13 (E.D.N.Y. May 8, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 2770015, 2020 U.S. Dist. LEXIS 93477 (E.D.N.Y. May 28, 2020); *cf. McNulty*, 137 F.3d at 738–39 ("[D]efaults have been found willful where, for example, an attorney . . . delayed more than 10 months before moving to vacate the ensuing default . . . ." (citing *Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir. 1978) (per curiam)).

## 2.    Meritorious Defense

Claimant argues that she has a meritorious defense to the civil forfeiture action against the Defendant-Funds. (Dkt. No. 17-1, at 9.) Claimant asserts that she has never been charged with a crime but was merely "the ex-partner of a criminal defendant whose conduct is the basis for the government's seizure" and that she has "provided substantial proof in the exhibits attached to her declaration that the funds in the subject account are derived from legal, financial transactions." (*Id.*) The Government argues that Claimant has failed to demonstrate that she has a meritorious defense because Claimant "fails to provide any support" for her assertion that checks she deposited from Zhang were loan repayments, Claimant "does not address the facts set forth in the complaint identifying the Defendant Funds as the proceeds of the underlying offenses" and "property involved in the laundering of those funds," and the records that Claimant "has

submitted for consideration provide no explanation for the vast majority of the funds deposited into Account 7090." (Dkt. No. 18, at 9–10.)

"A [claimant] seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *See Enron Oil Corp.*, 10 F.3d at 98. But the "test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* That is, to establish a meritorious defense, a claimant "need not establish [the] defense conclusively," *McNulty*, 137 F.3d at 740; rather, "[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make," *Am. All. Ins. Co., Ltd.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

For the Government to prevail in this action, it must demonstrate by a preponderance of the evidence that the Defendant-Funds are subject to forfeiture by establishing a "substantial connection" between the Defendant-Funds and the predicate criminal offense. *See* 18 U.S.C. § 983(c)(1), (3). But "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." *Id.* § 983(d)(1). The claimant has "the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." *Id.*

Here, Claimant appears to primarily argue that the Defendant-Funds are not the proceeds of a federal crime, (Dkt. No. 17-1, at 9–10; Dkt. No. 17-3, ¶ 13)—and therefore that the Government cannot establish a substantial connection between the Defendant-Funds and the criminal offenses specified in the complaint. Claimant states that she is the sole owner of the Defendant-Funds, that she has not been charged with any criminal offense, and that none of the Defendant-Funds are the proceeds of a federal crime. (Dkt. No. 17-3, ¶¶ 8, 13, 25), With respect to funds in Account 7090 that were provided by Zhang—Claimant states the payments were

repayments for loans made for use in Zhang's construction business. (*Id.* ¶ 23.) Plaintiff provides some documentation of certain funds in Account 7090 that, Claimant argues, demonstrates those funds are unrelated to any alleged underlying criminal conduct. (Dkt. No. 17-3, ¶¶ 16–22, 26; Dkt. Nos. 17-5 to 17-12.) In response, the Government cites to the complaint allegations that Claimant was "observed, no numerous occasions, as an active participant in the offenses underlying Zhang's conviction," stolen merchandise was found in the garage-like structure where Claimant resided, and the Government points to the absence of an "explanation for the vast majority of funds deposited into the account." (Dkt. No. 18, at 9–10).

The Court notes that, in order for the Defendant-Funds to be civilly forfeitable, all of the funds must be substantially connected to the predicate criminal offense. *See United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d 189, 197–98 (2d Cir. 2013) (vacating summary judgment where it was plausible to infer that certain funds that the Government sought to forfeit had been earned from legitimate sources). Claimant points out, with a supporting bank record, that "[a]t the time the criminal activity of . . . Zhang is alleged to have commenced, the account balance [of Account 7090] was at least $534,369.05." (Dkt. No. 27-3, ¶ 24; Dkt. No. 17-6, at 123.) Thus, even assuming certain funds in Account 7090 were forfeitable, Claimant has presented some evidence that at least some of the Defendant-Funds are not proceeds of, and therefore were not substantially connected to, a criminal offense.

On this record, the Court finds that Claimant has "present[ed] some evidence beyond conclusory denials to support [her] defense," *Enron Oil Corp.*, 10 F.3d at 98, that "give[s] the factfinder some determination to make," *Am. All. Ins. Co., Ltd.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants*, 856 F.2d at 879), and thereby "adequately stated a defense for purposes of a Rule 55(c) set aside of an entry of default." *Enron Oil Corp.*, 10 F.3d at 98.

\*     \*     \*

In sum, because Claimant's default was not willful, because the Government concedes setting aside the default will not cause prejudice, and because Claimant has presented some evidence that at least some of the Defendant-Funds are not proceeds of, and therefore not substantially connected to, a criminal offense, Claimant has demonstrated good cause for setting aside the entry of default. Accordingly, Claimant's motion is granted.

## IV.   THE GOVERNMENT'S MOTION FOR DEFAULT JUDGMENT

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Second, after a default has been entered against a defendant, and no party moves to set aside the default under Rule 55(c), the plaintiff must "apply to the court for entry of a default judgment" under Rule 55(b)(2). *Priestley*, 647 F.3d at 505

Here, because the Court has granted Claimant's motion, the entry of default is set aside, and Rule 55(a) is therefore not satisfied. Accordingly, the Government's motion for default judgment is denied.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Claimant's motion to set aside the entry of default and for leave to file a claim and an answer to the complaint, (Dkt. No. 17), is **GRANTED**; and it is further

**ORDERED** that the entry of default, (Dkt. No. 9), is set aside; and it is further

ORDERED that any claim must be filed within thirty-five days of the date of this

Memorandum-Decision and Order, and any answer or motion under Rule 12 must be filed within

twenty-one days of the filing of the claim; and it is further

ORDERED that the Government's motion for default judgment, (Dkt. No. 11-1), is

DENIED.

IT IS SO ORDERED.

Dated:   August 30, 2024

Brenda K. Sannes
Chief U.S. District Judge